## WARSZOWER *v.* UNITED STATES.

No. 338.   Argued January 16, 17, 1941.—Decided February 17, 1941.

*Mr. Osmond K. Fraenkel,* with whom *Mr. Edward I. Aronow* was on the brief, for petitioner.

*Mr. John T. Cahill,* with whom *Solicitor General Biddle, Assistant Attorney General Berge,* and *Messrs. Herbert Wechsler* and *Robert L. Werner* were on the brief, for the United States.

MR. JUSTICE REED delivered the opinion of the Court.

This case is similar to *Browder* v. *United States, ante,* p. 335. This petitioner also was indicted for the use of a passport for the purpose of entering the United States, which passport had been secured by false statements in the application for its issue. We granted certiorari because of the contention that this use of the passport was not prohibited by § 2, Title IX of the Act of June 15, 1917, and because of a conflict on a rule of evidence, referred to by the Circuit Court of Appeals.

The false statements charged were with respect to petitioner's name, citizenship, place of birth and residence abroad and the use relied upon was the presentation of the passport to an immigration inspector. A jury convicted petitioner, a sentence of two years was imposed and that judgment was affirmed by the Circuit Court of Appeals.[1]

As grounds for reversal petitioner urges (1) that the presentation of a wrongfully held passport to an immigration officer upon landing is not a use within the statute; (2) that the evidence of the use was insufficient to justify the submission of the case to the jury; and (3) that conviction was obtained by the use of admissions

---

[1] 113 F. 2d 100.

before the crime, without corroboration, to establish necessary elements of the charge.

Nothing need be added to the discussion in the *Browder* case of the illegality of this use. There are no marks of differentiation.

*Proof of Presentation.*—Petitioner's argument that the proof of presentation of the passport was insufficient rests upon the testimony of the inspector, which was based on the manifest of United States citizens arriving on the *S. S. Normandie* on September 30, 1937. The manifest contains a list of names, accompanied by passport numbers and other information. Next to each name appears a check mark by the inspector. The list includes "Robert Wiener," the holder of passport No. 332,207, which is the passport issued to petitioner. The inspector testified that he had no independent recollection of the arrival of this Robert Wiener, but that from looking at the manifest he could say that the passport had been presented to him, because "it is my invariable practice when the number of the passport appears on the manifest to ask for that passport and have it shown to me .... by the passenger." On cross-examination the inspector stated that he himself did not make any writing on the manifest as to what the people showed him. This colloquy then occurred:

"The COURT. .... do you make any entry on the manifest when a man identifies himself as an American citizen?

The WITNESS. The whole manifest is of American citizens.

The COURT. And when the man presented his passport what did you do?

The WITNESS. That check mark shows he was admitted as a United States citizen.

The COURT. On a passport?

The WITNESS. Not necessarily.

The COURT. Can you tell us whether he had a passport?

The WITNESS. From the fact the number of the passport appears there.

Q. And you checked——

Mr. FOWLER. That is objected to.

Q. Did you check the information on the manifest with information in the passport?

A. That is correct."

The petitioner asks reversal because of the answer "Not necessarily," contending this shows that the check mark did not inescapably indicate the presentation of a passport. The Government argues that the check mark was intended merely to show admission as a citizen and that the language does not nullify or indeed impugn the direct assertions of the inspector. We are clear that this testimony as a whole justified the submission to the jury at any rate and its conclusion that petitioner actually used his passport in securing admission to this country.

*Corroboration of Admissions.*—The prosecution had the burden of proving that the passport was obtained by the use of false statements. As the trial court instructed the jury it might convict if any one of the statements charged in the indictment to be false was found false, it is necessary before affirmance is justified to decide whether there was adequate evidence to support the charge of falsity as to each of the statements. Petitioner contends that as to the allegedly false statements of American citizenship and no prior residence outside the United States, there was no proof of falsity except admissions to the contrary made by petitioner prior to the use of the passport. Such admissions, it is urged, require corroboration. This argument is drawn from the requirement of corroboration as to confessions after the crime.[2]

---

[2] Wharton, Criminal Law (12th Ed.) §§ 357, 359; *Daeche* v. *United States,* 250 F. 566; Wigmore, Evidence (3rd Ed.) §§ 2070–71; Chamberlayne, Modern Law of Evidence § 1598; Underhill, Criminal Evidence (4th Ed.) p. 42.

As a corollary, it is said that the corroboration must reach to each element of the corpus delicti.[3]

To establish that petitioner was not a citizen of the United States and that he had resided abroad, the Government relied on the following proof: The manifest of alien passengers of the *S. S. Haverford,* which arrived at Philadelphia on March 27, 1914, stated that Welwel Warszower, age 21, was a citizen or subject of Russia, whose last permanent residence was in Vikolsk, Russia, where his father lived; that he had never been in the United States before; and that he had been born in Radajenko, Russia. Although the officer who had examined Warszower on this occasion was dead, the boarding officer testified it was the practice to check all answers on the manifest with the alien personally before allowing him to enter. Three years later, on June 5, 1917, petitioner registered for the draft under the name of William Weiner"; he stated he was an alien born in Russia on September 5, 1893, and a citizen or subject of Russia. Petitioner furnished the same information in a draft questionnaire returned on December 31, 1917, where he also stated that he spoke Russian, that he arrived in this country at Philadelphia on March 28, 1914, on the *S. S. Haverford,* that his parents had not been naturalized, that he had not taken out first papers, and that he was willing to return to Russia and enter its military service. In 1932, preparatory to traveling abroad, petitioner applied for a reëntry permit, which is required only of aliens. To support his application he showed the inspection card issued to him in 1914 upon his arrival in Philadelphia, and stated that he was born on September 5, 1893, at Kiev, Russia, which was his last permanent residence before his arrival in Philadelphia. The Government also showed that petitioner had never applied

---

[3] Cf. *Forte* v. *United States,* 68 App. D. C. 111; 94 F. 2d 236.

for naturalization under his own name, or the names "Weiner" or "Wiener," which he on occasion used. In his 1936 application for a passport in the name of Robert William Wiener, petitioner submitted a certified transcript of an entry in the Atlantic City birth records that a person of that name was born there September 5, 1896, but at the trial the Government proved the entry a forgery.

The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the inconsistent statement was made prior to the crime this danger does not exist.[4] Therefore we are of the view that such admissions do not need to be corroborated. They contain none of the inherent weaknesses of confessions or admissions after the fact. Cases in the circuits are cited by petitioner to the contrary. In *Gulotta* v. *United States*,[5] the decision turned on the similarity of confessions and admissions rather than upon any differences between admissions before and after the fact. In *Duncan* v. *United States*[6] and in *Gordnier* v. *United States*[7] the conclusion was reached without any comment upon this difference. Our consideration of the effect of admissions prior to the crime leads us to the other conclusion.[8]

The law requires that a jury be convinced beyond a reasonable doubt of the defendant's guilt. An uncorroborated confession or evidence of perjury, given by one witness only,[9] does not as a matter of law establish be-

---

[4] Wigmore, *supra.*

[5] 113 F. 2d 683.

[6] 68 F. 2d 136.

[7] 261 F. 910.

[8] Cf. *Miles* v. *United States*, 103 U. S. 304.

[9] *Phair* v. *United States*, 60 F. 2d 953. Cf. *United States* v. *Harris*, 311 U. S. 292.

yond a reasonable doubt the commission of a crime, but these are exceptions to the normal requirement that disputed questions of fact are to be submitted to the jury under appropriate instructions. In this case the earlier statements of birth and therefore necessarily of residence outside of the United States, if believed by the jury, prove the falsity of the statements to the contrary in the application. Where the crime charged is a false statement and where it finds its only proof in admissions to the contrary prior to the act set out in the indictment, it may be unlikely that a jury will conclude that the falsity of the later statement is proven beyond a reasonable doubt, but such evidence justifies submission of the question to them.

In this present case there was other evidence of the falsity of the disputed statements in the application. The manifest of the *S. S. Haverford* showed petitioner's arrival and classification as an alien at Philadelphia in 1914. The forged birth certificate adds to the proof of foreign birth by showing an effort to establish American nativity by false means, and the Government's proof of the absence of any attempt at naturalization supports the allegation of false statement as to citizenship.

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.