**UNITED STATES v. MARKMAN et al.**

No. 129, Docket 22193.

United States Court of Appeals
Second Circuit.

Argued Dec. 14, 1951.

Decided Jan. 14, 1952.

Joseph Aronstein, of New York City, for defendant-appellant Markman.

Irving I. Erdheim, of New York City (Erdheim & Armstrong and Robert F. Armstrong, all of New York City, on the brief), for defendant-appellant Livolsi.

Norman S. Beier, Asst. U. S. Atty., of New York City (Myles J. Lane, U.S. Atty., and Stanley D. Robinson, Asst. U.S. Atty., both of New York City, on the brief), for plaintiff-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Appellants herein were indicted, along with some seventeen other named defendants, as members of a narcotics syndicate active in the New York area since 1945. The indictment charged an unlawful conspiracy under 18 U.S.C. § 371 in the importation of narcotic drugs in violation of 21 U.S.C.A. §§ 173, 174, and 178, and in the importation, possession, and sale of such drugs without payment of tax and other regulatory requirements as required by 26 U.S. C.A. §§ 2550(a), 2552, 2553(a), 2554(a), 2555, 2567, and 2569. Their trials were severed from those of the others and they now appeal from a verdict and judgment of guilt and sentences to imprisonment.

The ring was engaged in the smuggling of opium into New York City from Mexico. Some of the opium was distributed in the

raw state for smoking; the remainder was processed in clandestine laboratories into heroin prior to sale. The ringleader and guiding spirit of the operation was one Meltzer, who had entered a plea of guilty to the indictment prior to the present trial. Markman's role was that of a distributor, securing the opium directly from Meltzer for sale. Livolsi, on the other hand, apparently took part in the final marketing of the opium in his neighborhood as an assistant to those who purchased through Markman and others from Meltzer.

■ Appellants' most serious contention is an asserted lack of substantiality to the evidence supporting their convictions. Since they were not at the heart of the conspiracy, they naturally attack the overt evidence of their relationship with the conspiracy and seek to wipe out the proof adduced of this by attempting to discredit the witnesses who connected them with the illegal affair. Livolsi criticizes the testimony of Philip Stein, who stated that his purchase of opium from Livolsi had grown out of their introduction by an admitted member of the ring, as coming from a "most sordid character" and an accomplice who could expect immunity from prosecution in exchange for his testimony. Markman attacks the evidence adduced through a federal agent, one Spivey, as to the former's involvement in the conspiracy, with certain alleged inconsistencies in Spivey's testimony. The answer to these contentions is simple: credibility is a matter for the jury and one which was carefully presented to it in this instance by the lower court's charge. See United States v. Gallo, 2 Cir., 123 F.2d 229; United States v. Moran, 2 Cir., 151 F.2d 661, 167 A.L.R. 403. Its verdict is not subject to appellate review on this ground, particularly where there seems no practical room for an inference of anything but guilt. United States v. Broxmeyer, 2 Cir., 192 F.2d 230.

■ Markman also pleads the invalidity of any conviction obtained by use of his admissions without corroboration, Warszower v. United States, 312 U.S. 342, 61 S. Ct. 603, 85 L.Ed. 876; Daeche v. United States, 2 Cir., 250 F. 566, 571; 7 Wigmore on Evidence § 2071, 3d Ed. 1940, asserting that his direct participation in the main smuggling and distribution scheme was not independently proven. We think, however, that the testimony to at least one sale of the ring's opium by Markman and to his acquaintanceship with certain admitted members of it was sufficiently corroborative. Whatever may be the rule elsewhere, we have held that the extra-confessional proof required need not itself preponderantly establish the guilt of the defendant; if it shows by independent facts that the crime has been committed against which the jury can measure the reliability and consistency of a defendant's own statements, this is enough. The purpose of the rule requiring corroborative testimony is only to guard against convictions based upon an untrue confession. Warszower v. United States, supra, 312 U.S. at page 347, 61 S.Ct. 603. Its function is not so much to give evidence of the defendant's guilt as to supplement his confession to that effect. United States v. Kertess, 2 Cir., 139 F.2d 923, certiorari denied Kertess v. United States, 321 U.S. 795, 64 S.Ct. 847, 88 L.Ed. 1084; United States v. Mellon, 2 Cir., 165 F.2d 80, certiorari denied Mellon v. United States, 333 U.S. 873, 68 S.Ct. 902, 92 L.Ed. 1150; Vogt v. United States, 5 Cir., 156 F.2d 308. See also Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120 and annotation following at 1130.

■ Markman also objects to the absence of proof that he took any active part in the conspiracy charged after April, 1948, alleging therefore that the three-year sentence for violation of 18 U.S.C. § 371 cannot be applied to him, since that provision did not become effective until September 1, 1948. There is, however, competent proof that the conspiracy continued after this later date. Markman, if he is to claim disassociation from it, must adduce affirmative proof to this effect. United States v. Compagna, 2 Cir., 146 F.2d 524, certiorari denied Compagna v. United States, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422; United States v. Cohen, 2 Cir., 145 F.2d 82, certiorari denied Cohen v. United States, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637. He has failed to do this.

■■ In view of the competent evidence in regard to Livolsi that the conspiracy was

functioning in 1947 and that he was a part of it, the lack of such proof for the years 1945 and 1946 does not support his claim of variance, even though the indictment charged that the conspiracy was instituted during this earlier period. Proof of active membership during the entire alleged life of a conspiracy is not required to sustain a conviction of guilty on this count. United States v. Harding, 65 App.D.C. 161, 81 F. 2d 563, 566, 567.

■ Livolsi also claims that the indictment should be dismissed as to him because of certain statements by a Special Assistant United States Attorney General during his testimony before a Federal Grand Jury in Newark, N. J., in March, 1950. Although we are not clear that the colloquy quoted in the margin[1] constituted a promise of immunity from further prosecution and a coincidental compelling or enticement of testimony, we think even firmer grounds exist for denying his claim. For no connection between the testimony given by Livolsi subsequent to the alleged promise of immunity and the evidence submitted toward indictment and conviction here has been shown by proof adduced at trial below.[2] Nor is there any presumption in law of such a connection of which appellant may avail himself. Mulloney v. United States, 1 Cir., 79 F.2d 566,

certiorari denied 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468. The Newark Grand Jury record was not submitted to the New York Grand Jury which voted the true bill. And it was received in evidence in the present trial only after appellant had testified to its substance and his counsel urged its admission. Thus there is a complete lack of proof that the Newark testimony constituted evidence for the prosecution of "the circumstances of his offense, the sources from which, or the means of which, evidence of its commission, or of his connection with it, [were] obtained." Emery's Case, 107 Mass. 172, 182, quoted in Counselman v. Hitchcock, 142 U.S. 547, 585, 12 S.Ct. 195, 35 L. Ed. 1110.

■ Finally, both appellants cite as reversible error a portion of the trial judge's charge to the jury to the effect that a verdict of innocent must follow "if the scales in which you weigh the evidence in this case are equally balanced." Literally interpreted, of course, this is a correct statement; we are asked to accept the possibility, however, that the jury implied from the negative, that a "slight tipping of the scales" would call for a verdict of guilty. But the charge as a whole is of opposite tenor; both before and after this statement, the court emphasized the correct and accept-

---

1. The alleged promise of immunity is to be found in the following colloquy between appellant Livolsi and the Special Assistant United States Attorney General during the Newark proceedings:

"Q. Don't you want to answer the questions here? A. Yes, I'd like to answer them as long as I know I'm not putting myself in any trouble.

"Q. You have already served time, haven't you? A. That's right.

"Q. If you served, you can't be convicted twice for the same thing? A. I don't want to get myself in trouble here. I may be saying something wrong.

"Q. Listen, Mr. Livolsi, if you have already served time you can't get yourself into more trouble. A. I understand that, sir. I mean, I might be incriminating myself.

"Q. You can't incriminate yourself, you have already served time and you have told us you have. A. I'm only out about a month or a month and a week.

"Q. The only thing you can get in

trouble for now is not telling the truth and the whole truth. A. I know, I'm telling the truth."

Whether or not the Special Assistant United States Attorney General's statements actually misled and deceived the witness we do not now decide, but see Alexander v. United States, 9 Cir., 181 F.2d 480, 482, and Rogers v. United States, 10 Cir., 179 F.2d 559, 562, affirmed 340 U.S. 367, 71 S.Ct. 438, 95 L. Ed. 344, for the pitfalls which such a method of interrogation has uncovered in other cases.

2. Moreover, it is obvious that no connection existed in point of fact. The answers which the promise of immunity is alleged to have stimulated concerned only (1) acquaintanceship with other members of the ring, which he denied, (2) a previous conviction, (3) attorney's fees, and (4) the telephones he used, i.e., at most innocuous admissions of no assistance to the investigation or prosecution of his crime.

ed interpretation of reasonable doubt and in fact it was an emphatic statement of the prosecution's high burden of proof which was the last thing the jury heard before retiring. Appellants' contention, therefore, that the phrasing in question amounted to error is far too speculative to justify our reversal.

Convictions affirmed.