**UNITED STATES**

v.

**Airman Matthew T. SWENSON,
United States Air Force.**

**ACM 33186.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 16 Jan. 1998.

Decided 27 July 1999.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Captain Michael J. Apol.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Tony R. Roberts.

Before YOUNG, Senior Judge, SPISAK, and SCHLEGEL, Appellate Military Judges.

OPINION OF THE COURT

YOUNG, Senior Judge:

Is an accused's admission that he intends to use a particular illegal drug during a particular time period sufficient to corroborate the accused's later confession that he used that particular drug during that time frame? We hold that it is.

The appellant was charged with wrongfully using marijuana, cocaine, and lysergic acid diethylamide (LSD), and making false representations about his pre-service drug use to procure his enlistment into the Air Force. Articles 112a, 83, UCMJ, 10 U.S.C. §§ 912a, 883. The prosecution withdrew the specification alleging use of cocaine after the military judge ruled that there was no corroboration to his use of that drug. The appellant pled guilty to the marijuana offense and not guilty to the others. The court members acquitted the appellant of fraudulent enlistment and wrongful use of LSD, but convicted him of attempting to use LSD. Article 80, UCMJ, 10 U.S.C. § 880. The approved sentence is a bad-conduct discharge, confinement for 3 months, forfeiture of all pay and allowances, reduction to E–1, and a reprimand. The appellant asserts that the military judge erred by (1) failing to suppress his uncorroborated confession, and (2) admitting evidence of uncharged misconduct. Finding no prejudicial error, we affirm.

## I. Facts

While in Korea, the appellant told an acquaintance, Staff Sergeant (SSgt) Smith, that his sister was going to mail him some LSD, that he had used cocaine, marijuana, LSD, and "crank" before joining the Air Force, and that while in tech school, he had used cocaine and received LSD in the mail from his sister. The appellant described the appearance of LSD and its effects and stated that he ingested Golden Seal and vitamins so that he could pass any Air Force drug tests. The appellant related that he intended to use marijuana, cocaine, and possibly LSD with his sister while on a mid-tour leave in Oregon. SSgt Smith reported this to the Air Force Office of Special Investigations (AFO-

SI). AFOSI agents asked SSgt Smith to find out more. The appellant later told SSgt Smith that his sister had gotten "burned" on the LSD deal, so she would not be mailing any to him.

When the appellant returned from his mid-tour leave, he was interviewed by AFOSI agents. After waiving his rights to silence and an attorney under Mil.R.Evid. 305, the appellant admitted, orally and in a signed, sworn statement, to using LSD on a camping trip during his mid-tour leave, on about 6 July 1997. He described its effects upon him and named other individuals who were present, including Airman First Class (A1C) Hublitz. The accused provided a urine specimen for testing and permitted AFOSI agents to search his dormitory room. No evidence of drugs or drug paraphernalia was found.

Of the several persons the appellant admitted were present when he used the LSD, AFOSI agents interviewed only A1C Hublitz. A1C Hublitz grew up in the same town in Oregon as did the appellant. During the interview, A1C Hublitz, described how, prior to the appellant's entry into the service, the appellant talked about using marijuana. A1C Hublitz stated that he saw the appellant in a shed filled with marijuana smoke. Although A1C Hublitz saw the marijuana, and the appellant was acting like he was high, A1C Hublitz never actually saw the appellant use the marijuana. In January 1997, when A1C Hublitz was home on his mid-tour leave and the appellant was home from tech school, the appellant showed A1C Hublitz a "cracker," a device used to extract the propellant from aerosol cans for the purpose of inhaling the propellant. In May or June 1997, while they were both stationed in Korea, the appellant confided in A1C Hublitz that he thought the AFOSI was following him. He told A1C Hublitz that his sister was going to send him some drugs. The day before A1C Hublitz left Korea for a new assignment, which was approximately two days before the appellant left Korea for his mid-tour leave, the appellant told A1C Hublitz that the AFOSI was opening his mail (which they were). A few days later, A1C Hublitz picked the accused up at an airport in Oregon, and they went camping with friends over the 4th of July

holiday. During the trip, A1C Hublitz saw the accused smoke marijuana and heard him ask others for "mushrooms," a hallucinogen. A1C Hublitz, apparently disturbed by the drug use, returned home early from the camping trip. He never saw the appellant use LSD.

After interviewing A1C Hublitz, the AFOSI agents arranged another interview with the appellant. On 22 September 1997, the appellant waived his rights and made another signed, sworn statement in which he admitted using marijuana on two occasions on the camping trip.

## II. Standards of Review

■ We review a military judge's ruling on the admission of evidence for an abuse of discretion. *United States v. Robles–Ramos,* 47 M.J. 474, 476 (1998) (applying abuse of discretion standard of review for admissibility of evidence of uncharged misconduct); *United States v. Ayala,* 43 M.J. 296, 298 (1995) (applying abuse of discretion standard of review for motions to suppress). *See generally* S. Childress & M. Davis, 2 *Federal Standards of Review* § 11.02 (2d ed.1992). "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Ayala,* 43 M.J. at 298.

## III. Admission of the Confession

At trial, the appellant moved to suppress all of the admissions and written statements he made regarding the use of drugs. He asserted that the only corroboration for these statements were other admissions, and under the law, one admission could not be used to corroborate another admission. The military judge excluded portions of the appellant's admissions concerning the use of cocaine, but found that the confession to use of LSD was corroborated by statements he made prior to the alleged use of LSD.

The basic military law on corroboration of confessions is contained in Mil.R.Evid. 304(g) and *United States v. Cottrill,* 45 M.J. 485 (1997). Mil.R.Evid. 304(g) provides in pertinent part that

[a]n admission or a confession of the accused may be considered as evidence

against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth. Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence.... Corroboration is not required for ... statements made prior to or contemporaneously with the act....

■ The Court of Appeals for the Armed Forces has held that

[t]he corroboration requirement for admission of a confession ... does not necessitate independent evidence of all the elements of an offense or even the *corpus delecti* of the confessed offense. *United States v. Maio*, 34 M.J. 215, 218 (C.M.A. 1992). Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted. *Id.; United States v. Rounds*, 30 M.J. 76, 80 (C.M.A. 1990). Moreover, while reliability of the essential facts must be established, it need not be done beyond a reasonable doubt or by a preponderance of the evidence. *Maio, supra* at 218 n. 1.

*U.S. v. Cottrill*, 45 M.J. 485, 489 (1997). The purpose of the rule is "to guard against conviction of an accused on a false or untruthful confession...." Stephen A. Saltzburg, et al., *Military Rules of Evidence Manual* 189 (4th ed.1997).

■ We hold that the military judge did not abuse his discretion by admitting the accused's confession. Under Mil.R.Evid. 304(g) the accused's statement to SSgt Smith, prior to the alleged commission of the offense, that he would or probably would use LSD on mid-tour leave in Oregon, was admissible without corroboration because it was not an admission of prior criminal conduct, but a statement of anticipated future conduct. Furthermore, since this statement did not need to be corroborated, it provided the necessary corroboration for the admission of the accused's confession to the AFOSI agents. Mil.R.Evid. 304(g); *Warszower v. United States*, 312 U.S. 342, 347, 61 S.Ct.

603, 85 L.Ed. 876 (1941) (stating that the corroboration rule protects against convictions which are based solely on untrue confessions, and statements made prior to the commission of the crime do not represent the same danger). The accused's statement to SSgt Smith that he intended to use LSD on his mid-tour leave in Oregon raises an inference of the truth of the essential facts admitted in his confession. The military judge did not abuse his discretion in admitting the confession.

## IV. Other Acts Evidence (Mil.R.Evid. 404(b))

### *The Facts*

Prior to entering pleas, the appellant made a motion *in limine* to exclude certain evidence as uncharged misconduct under Mil. R.Evid. 404(b):

(1) Appellant's statements that his sister was going to send him LSD;

(2) Appellant's statements that he was going to get high or do drugs during his mid-tour leave;

(3) Appellant's statements that he had used drugs prior to entering the service;

(4) Appellant's statements that he believed he could avoid urinalysis detection by using home remedies;

(5) Appellant's statements that he had used various drugs in the past;

(6) Appellant's statements that he had told other co-workers and friends about using drugs;

(7) Appellant's statements that he had gotten "screwed up" at a party prior to entering the service;

(8) Appellant's statements regarding the effects drugs had on him;

(9) Appellant showed individuals a "cracker" used to inhale $CO_2$;

(10) Appellant's asking about the availability of mushrooms.

■ Appellant argued that this evidence failed to meet the test for admissibility established in *United States v. Reynolds*, 29 M.J. 105 (C.M.A.1989). That case provides that

courts should test uncharged misconduct for admissibility under at least three standards:

(1) Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts?

(2) What fact of consequence is made more or less probable by the existence of this evidence?

(3) Is the probative value substantially outweighed by the danger of unfair prejudice?

*Id.* at 109. *Accord Robles–Ramos,* 47 M.J. at 476. The military judge made the following statement concerning the motion:

> In general, I will allow the prosecution witnesses to discuss matters that the accused told them specifically with regard to how he had used marijuana in the past including the times before he enlisted. How he desired to use LSD and marijuana in the future. How he planned to obtain LSD specifically with regard from his sister or bringing it back from the states. How he planned to avoid detection or avoided detection during urinalysis testing. The effects LSD and marijuana had on him. That he described what LSD looked like. That he knew what it looked like and what the accused said during the camping trip about marijuana and that he asked about other drugs and [mu]shrooms and also that he showed and talked about the cracker devi[c]e.
>
> Now, again, I'm, going to qualify that. I say that it will be allowed assuming the evidence is admissible other than to show that the accused is a bad person. I think the government has demonstrated that they will be able to do that with regard to those that I've already discussed.
>
> There will be no discussion of the accused's cocaine use or plans to use cocaine.
>
> Now, with regard to the specific matters set forth in the defense motion, I'm going to withhold ruling on the specifics for the most part and, obviously, if an objectionable issue comes up, we'll entertain it at that time.

Defense counsel made no objections to this evidence during the testimony of the witnesses.

■ Before we can reach the merits of this issue, we must first decide if there is anything for us to review. For this Court to review the ruling of a military judge admitting evidence, the record must show a *timely* objection or a *timely* motion to strike. Mil. R.Evid. 103(a)(1). A motion *in limine* may qualify as an objection that preserves the issue for appellate review, but only if the military judge makes a final ruling on the issue. *United States v. Jones,* 43 M.J. 708, 710 (A.F.Ct.Crim.App.1995). *See United States v. Ruth,* 46 M.J. 1, 4–5 (1997). A military judge is not required to rule immediately on a motion *in limine.* He has "considerable discretion in determining whether to defer ruling on motions *in limine,* despite the benefits of such motions by way of advance planning." *United States v. Sutton,* 31 M.J. 11, 16 (C.M.A.1990). By deferring his ruling, the military judge often can better assess the relevance and necessity of the evidence. *United States v. Cannon,* 33 M.J. 376, 381–82 (C.M.A.1991).

After our first reading of the military judge's decision, we were convinced that he had deferred making a final ruling on the admissibility of the evidence, and by failing to object at the presentation of the evidence before the court members, the appellant had not preserved the issue. After a second reading, we are not so sure. In the beginning, the military judge states that he will allow the prosecution witnesses to discuss the matters the defense objected to, with the exception of the accused's admissions to using cocaine. But, by the end of his decision, the military judge suggests that he is withholding a final ruling. While a cautious attorney would have taken the bait and objected at the presentation of the evidence, we have difficulty faulting counsel when the military judge's decision on the issue is unclear. Therefore, we will treat the issue as if the judge made a final ruling which preserved the issue on appeal.

■ Items (1), (2), and (4) reasonably support a finding by the court members that appellant intended to use LSD during his mid-tour leave and had a plan for avoiding detection of such use by urinalysis. Items

(3), (5), and (7) are not uncharged misconduct. They are direct evidence of the accused's knowing use of drugs, prior to his enlistment, which was inconsistent with statements he made on his enlistment contract. Items (6) and (8) would reasonably support a finding by court members that the accused had in fact used drugs prior to his enlistment. Item (10) is a closer call, but we believe that the evidence reasonably supports a conclusion that the appellant was interested in using hallucinogenic drugs, of which LSD is one. After evaluating this evidence in light of the entire record of trial, we are convinced that any prejudice from the admission of this evidence did not substantially outweigh its probative value. Mil.R.Evid. 403. The military judge crafted an instruction, with the assistance of the defense counsel, that sufficiently notified the court members of the limited purposes for which they could use this evidence.

■■■■ Item (9) is a different story. The appellant showed SSgt Smith and A1C Kublitz a "cracker." We can find no purpose for the admission of this evidence other than to show that the accused was a druggie. Although the military judge abused his discretion in admitting this evidence, we are convinced it was harmless. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

After the military judge "ruled" on the motion *in limine,* the appellant pled guilty to using marijuana on the camping trip. His counsel asked the military judge to prohibit the prosecution from producing evidence of this offense before the court members during findings on the fraudulent enlistment and LSD offenses. *See United States v. Cousins,* 35 M.J. 70 (C.M.A.1992) (holding prior use of one type of drug is not relevant to establish use of another type of drug on a different occasion). The military judge declined to do so. The defense counsel then told the military judge he should notify the court members that the accused had pled guilty to the marijuana specification, but claimed he was doing so only because of the military judge's refusal to prohibit introduction of evidence of his marijuana use. Presumably, the defense thought it could reap some benefit from telling the court members of the appellant's

guilty plea while retaining the right to contest the admission of the marijuana evidence on appeal. The defense was wrong. The defense affirmatively waived the right not to have the court members know of the offense to which he pled guilty. This waiver, coupled with the military judge's instructions that each offense must stand on its own, rendered the admission of the marijuana use harmless. Article 59(a). Furthermore, an accused's confession is "probably the most probative and damaging evidence that can be admitted against him, so damaging that a jury should not be expected to ignore it even if told to do so." *Arizona v. Fulminante,* 499 U.S. 279, 292, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (White, J., dissenting) (quotations and citations omitted). In light of the accused's admissions that he intended to use LSD and his confession that he did in fact use LSD, it is difficult to believe that the evidence of marijuana use could have affected the findings.

Before leaving this issue, we want to emphasize that we do not fault military judges for deferring rulings on such uncharged misconduct issues. Many of the descriptions of the evidence to which the appellant is objecting are general in nature and would be difficult to rule upon without understanding their context in the trial. However, when a military judge decides to defer his ruling, it should be crystal clear to the parties that he is doing so. Only then will counsel be on notice that they must further object to the evidence as it is presented.

### V. Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judge SPISAK and Judge SCHLEGEL concur.