**UNITED STATES of America**

**v.**

**Deborah D. JONES**

**No. CR. 302CR227.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 13, 2002.

Shannon Taylor, Esquire, Special United States Assistant Attorney, United States Attorney's Office, Richmond, VA, for Gov't.

Robert J. Wagner, Esquire, Office of the Public Defender, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

This Memorandum Opinion sets forth in full the reasoning upon which the defendant's objections to the admissibility of two post-arrest statements were sustained at the hearing held on October 9, 2002.

## STATEMENT OF FACTS

The defendant, Deborah D. Jones, was employed by the Richmond Police Department ("RPD") as an office specialist in the Division of Warrant Information Services. On June 17, 2002, Lieutenant Shamus, a sworn RPD officer in the same RPD Division, executed a warrant for the arrest of Jones, for allegedly having taken part in a robbery. A lawful search incident to that arrest uncovered a .25 caliber Raven semi-automatic firearm that was concealed in Jones's fanny pack, but no drugs or drug paraphernalia were discovered during that search or subsequently. To facilitate the robbery investigation, Detective Thompson, of the RPD's Aggravated Assault and Homicide Unit interviewed Jones. The videotape of the interview and the associated transcript reflect that Jones was given the advices and warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that, thereafter, she executed an acknowledgment and waiver of her rights. In the course of the videotaped interview, Jones made several statements concerning her history of drug use:

Thompson: Okay. Do, do you have a habit right now? You do? How much do you think you do a day?

Jones: He, that he does or me? [1]

Thompson: You.

Jones: I haven't, I haven't done any drugs in, uh, three days.

Thompson: Uh-hum. You say three days ago. How much do you think you would have to buy just to kind of level yourself off? 20, 40, 60?

Jones: About 20.

Thompson: Really? What is that a rock a day or two rocks a day?

Jones: It's one.

. . . . .

Thompson: How long have you had your habit?

Jones: He introduced me to them, to the drugs. In about April.

Thompson: In April? Did you ever use cocaine or anything prior to that?

1. At this point, Jones is referring to an ex-boyfriend who was the suspected principal in the robbery investigation. During the videotaped interview, Jones verified the ex-boyfriend's part in the robbery and also alleged that he had committed or ordered several assaults against her.

Jones: No.

Thompson: Never have? I'm not a drug investigator, anything like that. So I don't want you to worry, you know.

Jones: Well I am worried.

(Gov.Ex. 4).

By virtue of her position as an office specialist working at the information desk at the Division of Warrant Information Services, Jones had a prior professional relationship with Lieutenant Shamus. After the videotaped interview, as Lieutenant Shamus filled out warrant paperwork and awaited the opportunity to take Jones before a magistrate who would charge her with possessing a concealed weapon under the Virginia Code, Jones and the Lieutenant spoke conversationally. During that exchange, Jones admitted that she had been using heroin from April up until about the time of her arrest on the robbery warrant.

Jones was eventually charged in a single count indictment with violating 18 U.S.C. § 922(g)(3), possession of a firearm by an unlawful user of controlled substances. Jones waived trial by jury and stipulated to having possessed a firearm that moved in interstate commerce. Thus, the sole issue for determination at trial was whether the admissible evidence proved beyond a reasonable doubt that, during the time Jones possessed the firearm, she was an unlawful "user" of controlled substances under the standards adopted by the Fourth Circuit and explicated in *United States v. Williams,* 216 F.Supp.2d 568 (E.D.Va.2002).

At trial, the defendant objected to the admissibility of testimony from Lieutenant Shamus about Jones's post-interview statement in which she admitted to heroin use. Because the Government had not disclosed

the existence of that statement within the time required of the Agreed Discovery Order entered in the case, the objection was sustained.[2] The defendant next objected to the admissibility of Jones's videotaped interview with Detective Thompson on the ground that the statements therein, admitting to a history of substance abuse, were uncorroborated. For the reasons explained below, the objection was sustained.

## DISCUSSION

The Supreme Court of the United States acknowledged and circumscribed the corroboration rule in a trilogy of cases decided on the same day in 1954. *Smith v. United States,* 348 U.S. 147, 152, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *Opper v. United States,* 348 U.S. 84, 89, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *United States v. Calderon,* 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954). The following passage from *Smith* explains the reasons for, and the importance of, the rule. As the Supreme Court explained:

> The general rule that an accused may not be convicted on his own uncorroborated confession has previously been recognized by this Court. *Warszower v. United States,* 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876; *Isaacs v. United States,* 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229; *cf. Miles v. United States,* 103 U.S. 304, 311–312, 13 Otto 304, 26 L.Ed. 481, and has been consistently applied in the lower federal courts and in the overwhelming majority of state courts, *Forte v. United States,* 94 F.2d 236 (App.D.C.1937); 7 Wigmore, Evidence, ss 2070–2072. Its purpose is to prevent 'errors in convictions based upon untrue confessions alone,' *Warszower v. United States, supra,* 312 U.S. at

---

**2.** Further discussion of this issue is not required because the Government did not dispute the Agreed Discovery Order violation.

347, 61 S.Ct. at 606; its foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, *Bram v. United States, supra; Wilson v. United States, supra,* further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be 'involuntary' within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation-whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. Finally, the experience of the courts, the police and the medical profession recounts a number of false confession voluntarily made. Note, 28 Ind.L.J. 374. These are the considerations which justify a restriction on the power of the jury to convict, for this experience with confessions is not shared by the average juror. Nevertheless, because this rule does infringe on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which give rise to them.

*Smith,* 348 U.S. at 152–54, 75 S.Ct. 194.

In *Smith,* the Supreme Court held that the corroboration rule applies both to admissions and confessions, but nevertheless recognized a distinction between those two categories of extrajudicial statements. *Smith,* 348 U.S. at 154–55 n. 3, 75 S.Ct.

194. This distinction is of some moment because, unlike confessions, "admissions given under special circumstances, providing grounds for a strong inference of reliability, may not have to be corroborated." *Smith,* 348 U.S. at 155 n. 3, 75 S.Ct. 194 (noting, by example, a case where the defendant's statements were part of the res gestae and a case where the defendant, charged with bigamy, admitted to a previous marriage). It is, therefore, necessary first to categorize the defendant's statements for purpose of analysis.

In the current context, a confession is an extrajudicial statement, by the defendant, admitting to all elements of the offense—a "complete and conscious admission of guilt." *Opper,* 348 U.S. at 91, 75 S.Ct. 158. In comparison, an admission is an extrajudicial statement, by the accused, admitting a fact that the prosecution wishes to prove at trial. The corroboration rule is applicable to mere admissions, at least where the admission is made after the fact to an official charged with investigating the possibility of wrongdoing,[3] and the statement embraces an element vital to the Government's case. *Smith,* 348 U.S. at 155, 75 S.Ct. 194; *Opper,* 348 U.S. at 91, 75 S.Ct. 158.

■ In this case, Jones's statements respecting her past drug use were made to an officer conducting a videotaped interview pursuant to a robbery investigation. Because Jones did not confess to being an unlawful user of, or addicted to, a controlled substance while possessing or receiving a firearm that moved in interstate commerce, her statements did not encompass each element of the charged offense and, hence, did not constitute a full confession. Jones did, however, make statements admitting to a past and recent prac-

---

**3.** There does not appear to be any basis to distinguish the case where, as here, the defendant makes inculpatory statements concern- ing one crime while the investigator is questioning the defendant concerning a separate crime.

tice of using controlled substances, which, under *Williams,* is an element vital to the Government's case. Therefore, Jones's statements were admissions within the purview of the corroboration rule.[4]

■ Given the applicability of the rule to the admissions made by Jones, it is next necessary to determine the quantum of corroboration required to render the extrajudicial statements admissible. In *Smith,* the Supreme Court held that "it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged." *Smith,* 348 U.S. at 156, 75 S.Ct. 194. Thus, the independent evidence may "bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith,* 348 U.S. at 156, 75 S.Ct. 194. In *Opper,* the Supreme Court clarified what it means to "fortify" the truth of the confession, explaining that the independent corroboration must "support[ ] *the essential facts admitted* sufficiently to justify a jury inference of their truth." *Opper,* 348 U.S. at 93, 75 S.Ct. 158 (emphasis added).

Here, the essential elements of the charged offense that Jones admitted in the videotaped interview were her use of drugs both historically and recently. The Government has proffered no independent evidence showing a historical or recent use of controlled substances by Jones. The Government does not contend otherwise. Instead, the Government asserts that the admitted element is corroborated because other facts within Jones's videotaped statement were ultimately corroborated. Thus,

says the Government, it stands to reason that all the facts that Jones revealed during the interview were truthful.[5] In essence, the Government urges adoption of a rule that a statement that is corroborated in part is corroborated in whole. Under this reasoning, the Government may use any statement made by a defendant, even if the Government fails to establish the statement's veracity, so long as the Government can corroborate some subset of the facts revealed contemporaneously with that statement, without regard to the relationship between the corroborated facts and the elements of the offense charged.

This associational reasoning is contrary to the rule in *Opper,* which requires that the Government's corroborative evidence address the essential facts admitted, not peripheral facts unrelated to the crime in prosecution. Although "the corroborating evidence need not, itself, establish every element of the offense," *United States v. Waller,* 326 F.2d 314, 315 (4th Cir.1963), there most be some facts shown aliunde such that the essential facts revealed in the statement are borne out by the evidence. *Id.* In other words, there must be some nexus between the corroborative evidence and the admitted facts. The Government has failed to fortify the truth of Jones's admissions because its corroborative evidence does not address the essential facts admitted.

It is necessary next to determine whether this lack of corroboration renders Jones's statements inadmissable.[6] Jones first raised the corroboration rule in an

---

4. The Government has not offered, and the Court has not found, any special circumstances that would warrant excepting these admissions from the corroboration rule.

5. Detective Thompson testified that Jones's statements concerning the alleged robbery corroborated his robbery investigation and that he corroborated Jones's statements re-

specting assaults that occurred against Jones, including an assault that had occurred that very morning.

6. It is clear that, wholly apart from the issues of admissibility, an uncorroborated admission standing alone is insufficient, as a matter of law, to support a conviction. *Opper,* 348 U.S. at 92–93, 75 S.Ct. 158.

objection to admissibility and it was on this basis that the Court excluded Jones's videotaped admissions as evidence of guilt.[7]

In *Opper*, the defendant contended that uncorroborated admissions cannot be accepted as evidence. *Opper*, 348 U.S. at 86 n. 3, 89, 75 S.Ct. 158. Although the Supreme Court found that the corroboration rule applied to Opper's statements and that an uncorroborated extrajudicial admission will not support a conviction, *Opper*, 348 U.S. at 92, 75 S.Ct. 158, because the Court ultimately found sufficient corroboration in the record, it is unclear whether the Court agreed that uncorroborated admissions are inadmissible as well as legally insufficient to warrant a conviction.

The precedent of the United States Court of Appeals for the Fourth Circuit is, however, clear on that point. Our Court of Appeals has held that: "in order to be *admissible*, an extrajudicial confession must be corroborated as to the *corpus delicti*."[8] *United States v. Sapperstein*, 312 F.2d 694, 696 (4th Cir.1963) (emphasis

added); *United States v. Doe*, 92 F.Supp.2d 554, 557 (W.D.Va.2000). Thus, a threshold showing of corroboration is a necessary predicate for admissibility of the admission. *Warring v. United States*, 222 F.2d 906 (4th Cir.1955) (citing *Smith* for the proposition that an uncorroborated admission may not be used); *Doe*, 92 F.Supp.2d at 557–58. In this case, the Government has failed to proffer any independent corroboration of Jones's purported use of controlled substances[9] and thus Jones's uncorroborated admissions must be excluded.

Finally, a question arises as to the continuing vitality of the corroboration rule because the Supreme Court has not reaffirmed the rule since the *Miranda* decision. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Dickerson*, 163 F.3d 639, 641 & n. 2 (D.C.Cir.1999). The Supreme Court has explained that the purpose of the corroboration rule "is to prevent errors in convictions based upon untrue confessions alone." *Smith*, 348 U.S. at 153, 75 S.Ct. 194 (quoting *Warszower v. United*

---

7. The Court reviewed the videotaped interview and the transcript of that interview, in their entirety, for the limited purpose of determining whether the statements therein were within the ambit of the corroboration rule.

8. As earlier indicated, it appears that it is no longer required that corroboration reach to each element of the *corpus delicti*, rather, the test is whether the Government has corroborated the truthfulness of the defendant's statements. The Court need not decide that issue in this case because the Government has failed to meet the less stringent threshold showing of trustworthiness. The Court notes that, unlike the crime at issue in *Smith*, section 922(g)(3) does present a crime in which there generally is a tangible *corpus delicti*. In order to be adjudged guilty, the accused must have possessed a firearm—a tangible object. Nevertheless, a necessary element of section 922(g)(3) is the accused's status as an unlawful user of controlled substances. At least

where, as here, the accused has not been found in the presence or possession of illegal drugs or drug paraphernalia, but rather is hailed into court on the strength of her own statement, it would seem section 922(g)(3) takes on a sufficiently ephemeral cast that "the corroborative evidence must implicate the accused in order to show that a crime has been committed." *Smith*, 348 U.S. at 154, 75 S.Ct. 194.

9. Even if the Court had not excluded Jones's post-interview statement to Lieutenant Shamus in which Jones admitted heroin use, that statement would not suffice to corroborate her videotaped statements because "one uncorroborated admission by the accused does not, standing alone, corroborate an unverified confession." *Wong Sun v. United States*, 371 U.S. 471, 491 n. 15, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Calderon*, 348 U.S. at 160, 75 S.Ct. 186.

*States*, 312 U.S. 342, 347, 61 S.Ct. 603, 85 L.Ed. 876 (1941)). Although "confessions may be unreliable because they are coerced or induced ... separate doctrines exclude involuntary confession from consideration by the jury." *Smith*, 348 U.S. at 153, 75 S.Ct. 194. Thus, apart from a statement's voluntariness, its "reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past." *Id.* In *Smith*, the Supreme Court noted the experience of the police, judiciary and medical profession with false confessions voluntarily made. *Id.* Relevant here is the Supreme Court's observation that a statement's veracity may be doubted when made by a suspect "anxious to cooperate with the government in the hope of ... avoiding criminal prosecution." *Calderon*, 348 U.S. 160, 164, 75 S.Ct. 186, 99 L.Ed. 202 (1954). Here, the defendant was under investigation for her alleged participation in a robbery, and it is plausible that her statements admitting substance abuse were designed to gain the investigators sympathy or to assure the investigator that she was being candid and forthright.[10] Also relevant is the Supreme Court's observation in *Smith*, that a statement can be unreliable if extracted during a police investigation because it is produced by "strain and confusion accompanying [the defendant's] predicament." *Smith*, 348 U.S. at 154, 75 S.Ct. 194. Here, the text of the statement made by Jones actually reflects her "worry" about the situation.

**10.** If this were indeed the case, the resulting irony is not lost on the Court. Jones may have intended her substance abuse admissions to lend trustworthiness to her exculpatory statements concerning the robbery, but the

In any event, as the Supreme Court explained in Smith, Miranda warnings exist to safeguard the privilege against compulsory self-incrimination, *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; Wayne R. LaFave, et al., 2 *Criminal Procedure* § 6.5(b), at 509 (2d ed.1999), and therefore do not address the extant concern whether statements, even voluntarily made, may be untruthful. *Smith*, 348 U.S. at 152–54, 75 S.Ct. 194. Indeed, in most of the key cases respecting the corroboration rule, the defendant's statements were voluntary and many of the defendants had been informed of their *Miranda* rights. *See, e.g., Opper*, 348 U.S. at 88–89, 75 S.Ct. 158; *Calderon*, 348 U.S. at 162, 75 S.Ct. 186; *Waller*, 326 F.2d at 314; *Sapperstein*, 312 F.2d at 696; *Warring*, 222 F.2d at 909. Hence, it would be imprudent to presume that the Supreme Court would reject the rule on the basis of the *Miranda* decision. More importantly, because the Supreme Court has spoken to the issue as part of its reasoning in deciding *Smith*, it is for that Court, not this one, to circumscribe the corroboration rule in perspective of the decision in *Miranda*.

For the foregoing reasons, the defendant's videotaped statements are inadmissible because there is no corroborative evidence as to the admitted facts, viz. drug use, which is an essential element of the charged offense.

### CONCLUSION

The objections made by the defendant to the admissibility of two post-arrest statements are sustained.

Government may not corroborate Jones's statements concerning the robbery in order to prove the veracity of her substance abuse admissions.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.