BAKER, Chief Judge,
with whom RYAN, Judge, joins (dissenting):
This Court is riding a pendulum back and forth when it comes to the law on corroborating confessions. In eleven years, we have moved from one extreme in United States v. Seay, 60 M.J. 73 (C.A.A.F.2004), to the other extreme in United States v. Adams, 74 M.J. 137 (C.A.A.F.2015). In Seay, the Court found the appellant’s confession to stealing a wallet was corroborated by the fact — or more precisely the absence of the fact — that no wallet was found on the victim’s body. 60 M.J. at 80. From the absence of this fact, the Court made an inference that because no wallet was found on the victim, the appellant must have taken it. Id. Thus, his confession to stealing the wallet was corroborated. Id.
Today, the Court swings the law back to the opposite extreme. In the view of the majority, “[wjhen independent evidence which is sufficient to corroborate an essential fact is provided, that essential fact is admissible.” Adams, 74 M.J. at 140. However, they go on to say, “if sufficient corroborating evidence of an essential fact is not provided, then the uncorroborated fact is not admissible and the military judge must excise it from the confession.” Id. The majority thus requires that every essential fact identified in a confession must be individually corroborated on a one-for-one basis.
The majority’s approach precludes the drawing of appropriate inferences from an otherwise trustworthy statement. Moreover, because the only essential fact in Appellant’s statement that is not demonstrated by inde *142 pendent evidence is the actual theft of the cocaine, the Court’s decision effectively returns the law to a corpus deleeti test.
The majority is trying to have it both ways. It purports- to adhere to United States v. Cottrill, 45 M.J. 485 (C.A.A.F.1997), disavowing the corpus deleeti test or a requirement to prove all the elements of the offense, but then rejects Appellant’s statement for lack of independent evidence, where the only independent evidence of an essential fact that is lacking is of the crime itself: “[DT] grabbed the coke.” It is difficult to imagine, however, that a drug dealer would ever report the theft of cocaine to the police. All the other facts in Appellant's statement are corroborated: the weapon used, the place of the crime, Appellant’s participation in drug culture,' and most importantly, the unique name of the “victim.” The last point is particularly noteworthy because of the unlikelihood that Appellant could make up the name “Ootz,” which then also happened to be the name of a known drug dealer in the area.
I did not join Seay and I do not join the Court today. I believe the law is and should be in a different place between the extremes presented in Seay and in Adams.
I would start with two principles. The purpose of the law as stated in Smith v. United States, 348 U.S. 147, 153, 75 S.Ct. 194, 99 L.Ed. 192 (1954) (citing Warszower v. United States, 312 U.S. 342, 345, 61 S.Ct. 603, 85 L.Ed. 876 (1941)), is to protect against false confessions. More specifically, Military Rule of Evidence (M.R.E.) 304(g) and case law seek to protect against three possibilities: the risk that interrogation might produce a false confession; the risk .that for psychological reasons or attention gathering purposes a person might choose to falsely confess; and, in the military context, there is the additional risk that grade and command differentials might result in false confessions. See United States v. Yeoman, 25 M.J. 1, 4 (C.M.A.1987) (stating that the purpose of the corroboration rule is to prevent “errors in convictions based upon untrue confessions alone” or confessions “based upon words which might reflect the strain and confusion caused by the pressure of a police investigation”) (citation and internal quotation'marks omitted). To this end, the law requires “the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.” Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954).
The first principle, therefore, is that the purpose of the law is to establish the trustworthiness of the statement. In other words, not every element or fact contained in the confession must be independently proved. The goal is trustworthiness. Thus, if substantial independent evidence indicates the statement is trustworthy, then appropriate inferences may be drawn from the statement beyond those for which there is independent evidence including the fact that a crime has been committed.
The second principle is that where a conviction is based exclusively on a confession, a court’s inquiry should, as always, be rigorous and searching. But the test is one of corroboration. The purpose is to establish the trustworthiness of the statement, not to have a mini-trial to establish the elements of the confession and thus the crime, so that one can then introduce the confession in order to prove the crime.
If the government were required to have independent evidence of every essential fact in the confession as the majority now concludes, then the confession is no longer independent evidence, it is a redundant supplement to the government’s other evidence. Moreover, the government would be barred from using the confession to fill in essential facts that might not otherwise be known to the government. As Cottrill recognized, the “quantum” of evidence required to corroborate need only be slight. 45 M.J. at 489. That is why, consistent with our approach to Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2012), this Court has not adopted a literal reading of M.R.E. 304(g), because the result would be unworkable in practice. Rather, this Court has recognized that M.R.E. 304(g) was intended to implement Opper. See Manual for Courts-Martial, United States ch. xxvii, para. 140.- *143 a.(5) (1968 ed.) {MCM) (the corroboration rule was updated in the 1968 MCM to say, in part, “the independent evidence need only raise an inference of the .truth of the essential facts admitted,” thus reflecting the Supreme Court’s holding in Opper); United States v. Rounds, 30 M.J. 76, 80-82 (C.M.A.1990). Thus, the Court has heretofore applied a purpose-based reading of the rule that tests for trustworthiness through independent evidence of those essential facts necessary to validate the trustworthiness of the confession. United States v. Maio, 34 M.J. 216, 218 (C.M.A.1992); Cottrill, 46 M.J. at 489; Seay, 60 M.J. at 79-80.
In this case, the military judge admitted Appellant’s statement that:
After my friend Beirl move [sic] me, [DT] & Anderson where [sic] at my house and [DT] was trying to get drugs. He told me who the person was Ootz [sic], who had ripped me off previously & gave me the idea to rob him. We met him at a Wal-mart and had him drive over to the Micro-tel where we got in his car. [DT] looked at the stuff began talking shit & I pulled my gun out and [DT] grabbed the coke & we got out of Ootz car & got in mine and returned to base.
Q: What day did this take place?
A: 28 Feb 2011[.]
Q: What was deal agreed upon by [DT] and Ootz?
A: A ball for $220[J
Q: Did you have the $220 on you?
A: No only $80 cause we were gonna rob him[.]
Q: What happened after you all got in Ootz [sic] vehicle?
A: [DT] asked for the stuff and an argument began and I pulled out my gun[.]
Q: Did you say anything to Ootz?
A: I told him not to do that shit again & then we got out[.]
Q: What did you mean by that?
A: About ripping [people] off[.]
Q: Did Ootz say anything?
A: No[J
Q: Did Ootz see the gun in your hand?
A: Yes I waived it around quick[,]
Q: What kind of gun did you have?
A: S & W 40 cal sigma[.]
Q: Where did you get the gun?
A: Bought in PA/April 2010[.]
Q: When did you bring the gun to FDNY?
A: Christmas leave 2010[.]
Q: What happened after you, [DT] and Anderson got back in your vehicle?
A: Nothing we drove back to post[.]
Q: Where was the gun when you were driving back on post?
A: On me in my pants[.]
The military judge and CCA concluded this statement was corroborated. I agree and concur in the lower court’s assessment of the corroborating facts. The evidence of corroboration is strong. First, Ootz was a former soldier and known drug dealer, with an uncommon if not unique last name that matched the name of the drug dealer Appellant confessed to robbing. CID knew this based on its independent search of its files. Second, the same type of weápon — a .40 mm Smith & Wesson — Appellant stated he used in the erime was found in his residence four days later. Third, bags of synthetic marijuana, smoking devices, and a syringe were also found in Appellant’s house. While cocaine is a perishable item, this evidence demonstrated Appellant’s knowledge and connection to drug culture. Less important is the fact that the locations where Appellant stated the events took place, in fact, exist in the actual area of the base. What is missing is independent evidence of the robbery itself, i.e., that “[DT] grabbed the coke.” But requiring evidence of this fact leaves us with the corpus delecti test. What we have instead iscorroboration of the means, the place, the drug connection, and the unique name of the “victim” all of which indicate the statement is trustworthy. Therefore, I would affirm the military judge, the CCA, and the conviction, and respectfully dissent.