UNITED STATES

v.

Senior Airman Michael C. MCPHERSON,
United States Air Force

ACM S32068

U.S. Air Force Court of Criminal Appeals.

19 November 2013

Sentence adjudged 13 April 2012 by SPCM convened at Mountain Home Air Force Base, Idaho. Military Judge: W. Shane Cohen (sitting alone).

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Rhea A. Lagano; and Gerald R. Bruce, Esquire.

Before ORR, HARNEY, and MITCHELL, Appellate Military Judges

## OPINION OF THE COURT

MITCHELL, Judge:

A special court-martial comprised of a military judge sitting alone convicted the appellant, pursuant to his pleas, of being absent without leave and divers distribution of anabolic steroids in violation of Articles 86 and 112a, UCMJ, 10 U.S.C. §§ 886, 912a. He was also convicted, contrary to his pleas, of fraudulent enlistment for the deliberate concealment of his prior possession of anabolic steroids; unauthorized absence; making a false official statement; possession of a controlled substance; and the use of anabolic steroids, in violation of Articles 83, 86, 107, and 112a, UCMJ, 10 U.S.C. §§ 883, 886, 907, 912a. The court-martial sentenced him to a bad-conduct discharge, confinement for 8 months, reduction to E–1, and a reprimand. The convening authority approved the adjudged sentence.

On appeal, the appellant avers three issues: (1) His conviction for fraudulent enlistment is factually insufficient; (2) His trial defense counsel were ineffective in that they did not advise him of his rights under Articles 12 and 138, UCMJ, 10 U.S.C. §§ 812, 938; and (3) He suffered cruel and unusual punishment when he was not provided prescribed medication during post-trial confinement.[1] We disagree on all the issues and affirm the findings and approved sentence.

---

1. Although not assigned as a separate error, the appellant, in his claim of ineffective assistance of

## Background

The appellant was a Senior Airman (SrA) with over four years of service and two deployments to Iraq by the time of trial. The appellant was held past the expiration of his four-year term of service pending the court-martial proceedings.

In June 2010, the appellant was dating SrA SK. At trial, SrA SK testified that she noticed a blue box under the appellant's bed. The appellant explained it contained steroids, which he distributed, but did not use. In February 2011, the appellant deployed and left SrA SK in charge of his storage unit, vehicle, and household possessions. In April 2011, while the appellant was deployed, he and SrA SK ended their relationship. Shortly thereafter, SrA SK told Special Agent (SA) DK of the Air Force Office of Special Investigations (AFOSI) that the appellant was distributing steroids and gave him permission to seize the blue box from the appellant's storage unit. The contents were tested and disclosed the blue box contained foil packets of Glucotika, hypodermic needles, and vials of Proviron.[2] Proviron is a commercial name for the anabolic steroid mesterolone, and testing confirmed the presence of the Schedule III substance.

During an AFOSI interview, the appellant admitted the blue box was part of his belongings that he brought with him from California when he entered the military. He admitted using steroids before entering the Air Force, but claimed he had not used them since he was on active duty. When asked specifically about the Proviron, the appellant stated he was unsure if they were steroids and instead described them as "something to enhance your body while taking steroids." The appellant also described that when he lived in California, he stored steroids for a friend, and that the Proviron may have belonged to his friend.

The appellant also informed SA DK that he had steroids at his home. He and the agent went to his home where the appellant produced a cardboard box from his closet that contained steroids and syringes. The steroids were the remainder of a second distribution he had made to a fellow Airman. The appellant was ordered, pursuant to a search authorization, to provide a urine sample, which tested positive for the presence of the metabolites of Stanozolol, a Schedule III controlled substance.

After the investigation began, the appellant was brought back from his terminal leave. He became frustrated and decided to work on repairing his rental home in order to recover his deposit rather than going to work. The appellant was absent from duty for three days without leave before he returned. Additionally, on another occasion the appellant showed up for work when he was too intoxicated to perform his duty.

Additional facts relevant to each section are addressed below.

## Factual and Legal Sufficiency

The appellant avers that although he confessed to possessing anabolic steroids prior to enlistment in the Air Force, the evidence used to corroborate his confession did not exist until 2011, after his enlistment. Therefore, his confession was a factual impossibility.

■ We review issues of factual and legal sufficiency de novo. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F.2002).

■ The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are ... convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the

---

counsel, raises the issue that his rights under Article 12, UCMJ, 10 U.S.C. § 812, were violated when he was confined in immediate association with a foreign national for 15 days.

2. Fingerprint analysis of the box and its contents only recovered one fingerprint that was identifi-

able. Senior Airman (SrA) SK's fingerprint was on one of the foil packets of Glucotika. SrA SK denied that she had ever touched the box or its contents when previously asked by Special Agent DK.

evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

■ "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *Turner*, 25 M.J. at 324. "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F.2001) (citing *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F.2000)).

On 17 October 2007, the appellant completed the Air Force Alcohol and Drug Abuse Certificate, Air Force Form (AF Form) 2030. On that form, the appellant indicated that he had never "experimented with, used, or possessed any illegal drug or narcotic." An illegal drug, as defined on the form, included anabolic steroids. The appellant enlisted in the Air Force on 19 October 2007 in Sacramento, California.

During an interview with AFOSI, the appellant completed an AF Form 1168 in which he described his involvement with steroids prior to joining the Air Force. The appellant admitted the "supplements" in the blue box from his storage unit were his and that he brought them with him when he came to Idaho from California in 2008. He also discussed his current possession of other steroids and explained, "I planned on taking them again when I could devote myself to the gym like I did when I took them in California."

At trial, the Government's forensic chemist testified that a marking on the bottles of steroids found in the blue box was likely indicative of a manufacturing date of February 2011, and therefore it was possible that the steroids did not exist prior to 2011.

■ Mil. R. Evid. 304(g) provides that an admission by the appellant may only be considered as evidence against him if inde-pendent evidence has been introduced that corroborates the essential facts. The standard for corroboration is "very low." *United States v. Seay*, 60 M.J. 73, 80 (C.A.A.F.2004). The quantum of corroborating evidence may be "very slight." *United States v. Melvin*, 26 M.J. 145, 146 (C.M.A.1988). This very slight "corroborating evidence need not confirm each element of an offense, but rather must 'corroborate[ ] the essential facts admitted to justify sufficiently an inference of truth.'" *United States v. Arnold*, 61 M.J. 254, 257 (C.A.A.F.2005) (quoting Mil. R. Evid. 304(g)) (omission in original).

■ We review the denial of a motion to suppress a confession under an abuse of discretion standard and will not disturb the military judge's findings of fact unless those findings are clearly erroneous. *United States v. Simpson*, 54 M.J. 281, 283 (C.A.A.F. 2000) (citing *United States v. Young*, 49 M.J. 265, 266–67 (C.A.A.F.1998)); *United States v. Ford*, 51 M.J. 445, 451 (C.A.A.F.1999).

■ Here, the military judge ruled on the admissibility of the confession during the initial session. The military judge found the following facts were sufficient to establish corroboration: the appellant resided in California when he enlisted, he travelled to Mountain Home Air Force Base (AFB), Idaho, in 2008 when he joined the Air Force, he demonstrated knowledge of the "blue bin" and its contents, and he distinguished between the steroids and supplements he purchased while on active duty from those he possessed prior to enlisting.

The military judge did not abuse his discretion in concluding the very low standard for corroboration was met. The later testimony of the forensic chemist that a marking on the bottle might be a manufacturing date after the appellant's enlistment does not negate the appellant's confession. In fact, the appellant's possession of steroids and supplements concurrent with his admission further corroborates the confession of previous possession. Moreover, the presence of steroid metabolites in his urine adds to the quantum of evidence available to corroborate his admission.

■ We also consider the appellant's statement of intended future use of steroids as corroboration of his confession to pre-service use and possession. Here, the appellant stated that he intended to use the steroids in his possession in the same manner and for the same purpose as he did before he came into the Air Force. A statement of anticipated future misconduct does not need to be corroborated and can serve to corroborate a confession. *United States v. Swenson,* 51 M.J. 522, 525 (A.F.Ct.Crim.App.1999).

Having weighed the evidence in the record of trial, with allowances for not having personally observed the witnesses, we are personally convinced of the appellant's guilt beyond a reasonable doubt of fraudulently enlisting in the Air Force by concealing his pre-service possession of anabolic steroids. Similarly, we find a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.

### Confinement with Foreign Nationals

The appellant avers the Air Force violated his Article 12, UCMJ, rights by housing him with a foreign national known as "The Mexican." [3] He further argues that due to the short time period of the confinement, he was unable to seek the appropriate redress for this issue.

■ Article 12, UCMJ, states: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." We review de novo whether an appellant's post-trial confinement violates Article 12, UCMJ. *United States v. Wise,* 64 M.J. 468, 474 (C.A.A.F.2007). "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Id.* at 469 (citing *United States v. White,* 54 M.J. 469, 472 (C.A.A.F.2001)). This administrative exhaustion requirement furthers two related goals: the resolution of the issue at the lowest level and the development of the record for later appellate review. *Id.* at 471 (citing *United States v. Miller,* 46 M.J. 248,

250 (C.A.A.F.1997)). "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Wise,* 64 M.J. at 471. Unless there are some unusual or egregious circumstances, an appellant with a complaint about post-trial confinement conditions must show he has exhausted the prisoner-grievance system at the confinement facility and that he has petitioned for relief under Article 138, UCMJ. *Id.* (citing *White,* 54 M.J. at 472).

■ The appellant was initially confined at the Elmore County Detention Facility in Idaho for 15 days. He alleges that for eight of those days, he was housed in an open bay with a foreign national known only as "The Mexican," who was awaiting deportation hearings. The appellant and "The Mexican" played card games every night while in confinement, but he does not know his actual name. The appellant did not raise this as an issue in clemency, nor is there any evidence that he notified the local confinement officials of this issue.

The appellant did not make any complaints about a violation of Article 12, UCMJ, in his clemency petition even though his clemency request was submitted after he was transferred to the Naval Consolidated Brig Miramar. The appellant waited until appellate review to raise the issue. He did not notify anyone in his chain of command or at the confinement facility of the Article 12, UCMJ, violation at the time it was allegedly occurring, nor did he file a grievance or make an Article 138, UCMJ, complaint. *See, e.g., United States v. Brandon,* ACM 37399, 2010 WL 4025685 (A.F.Ct.Crim.App. 22 March 2010) (unpub. op.). As a result, the Air Force was unable to investigate the claims, make a record of it for review, or have the opportunity to immediately correct the situation, as warranted. Therefore, we find no "unusual or egregious circumstance" to excuse the appellant's failure to pursue available administra-

3. The appellant also cites to Air Force Instruction 31–205, *The Air Force Corrections System,* ¶ 1.2.4 (4 April 2004, certified current 28 April 2011), which reasserts Article 12, UCMJ, protections.

tive remedies. *See Wise,* 64 M.J. at 471. Based on his failure to exhaust his administrative remedies and the absence of unusual or egregious circumstances, relief for his claim of a violation of Article 12, UCMJ, is not warranted.

### Ineffective Assistance of Counsel

The appellant alleges his trial defense counsel were ineffective as they did not advise regarding his right to not be confined with foreign nationals under Article 12, and his right to file a complaint under Article 138, UCMJ, thus preventing him from seeking timely relief.

■■■■ Claims of ineffective assistance of counsel are reviewed by applying the two-prong test as established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States v. Davis,* 60 M.J. 469, 473 (C.A.A.F.2005). This test requires the appellant to show trial defense counsel's conduct was deficient, which resulted in prejudice denying the appellant a fair trial. *Id.* Such claims are reviewed de novo. *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F.2009). Our superior court applies the *Strickland* test through a three-part analysis:

1. Are appellant's allegations true; and, if they are, is there a reasonable explanation for counsel's actions ...?

2. If they are true, did the level of advocacy fall[ ] measurably below the performance ... [ordinarily expected] of fallible lawyers?

3. If ineffective assistance of counsel is found to exist, is ... there ... a reasonable probability that, absent the errors, [there would have been a different result]?

*United States v. Polk,* 32 M.J. 150, 153 (C.M.A.1991) (internal quotation marks and citations omitted).

■■■■ The appellant bears the heavy burden of establishing his trial defense counsel were ineffective. *See United States v. McConnell,* 55 M.J. 479, 484 (C.A.A.F.2001). The law presumes counsel actions to be ap-

propriate and we will not second-guess a trial defense counsel's strategic or tactical decisions. *United States v. Morgan,* 37 M.J. 407, 409–10 (C.M.A.1993). To prevail on a claim of ineffective assistance of counsel, the appellant "must rebut this presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987) (citation omitted).

■■ We find that the appellant was aware of Article 12, UCMJ, and its protection. In their affidavits to this Court, both trial defense counsel explained they always advised clients of their rights under Article 12, UCMJ, and Article 138, UCMJ, although they did not specifically recall advising this particular client of these rights. Based on these assertions, by two seasoned trial defense counsel, we are satisfied the appellant was advised of his rights under Article 12, UCMJ, and Article 138, UCMJ. Therefore, we conclude that the appellant's allegations are not true, and he has failed to meet his burden on the first prong of the *Strickland* test.[4]

■■ Assuming, arguendo, the appellant's allegations that he was not advised of his specific rights under Articles 12 and 138, UCMJ, were true, we do not find this failure falls below the level of advocacy commonly expected of our trial defense counsel. Therefore, the appellant would fail the second prong of the *Strickland* test. Because the appellant's affidavit alleges facts that would not result in relief even if any factual dispute were resolved in his favor, we reject the claim on that basis. *United States v. Ginn,* 47 M.J. 236, 248 (C.A.A.F.1997). Trial defense counsel advised their client in writing of his right to submit any matters to the convening authority for consideration during clemency. The appellant was aware he could make complaints to his chain-of-command as

---

4. We note the post-trial affidavits would not be required if trial defense counsel had provided their advice in writing and had the client acknowledge that advice. This could be incorpo-

rated into the post-trial rights advisement that trial defense counsel provide to their clients and usually admit as an appellate exhibit.

he complained of other perceived mistreatment to his first sergeant.[5] Trial defense counsel are required to advise their clients of their post-trial rights. Rules for Courts–Martial (R.C.M.) 1010 and 502(d)(6). However, there is not an R.C.M. that requires trial defense counsel to advise their client of Article 12, UCMJ. We decline to find that trial defense counsel are required to advise all clients who are sentenced to confinement on Article 12, UCMJ.[6]

### Cruel and Unusual Punishment

The appellant argues that his post-trial confinement conditions constituted cruel and unusual punishment under the Eighth Amendment.[7] He contends that the post-trial confinement facility failed to provide him his prescribed medication, thereby denying him his right to necessary medical care.

■■■■ We review de novo whether the facts alleged establish cruel and unusual punishment. *United States v. Lovett*, 63 M.J. 211 (C.A.A.F.2006). This is also true for violations alleged under Article 55, UCMJ, 10 U.S.C. § 855:

> Denial of adequate medical attention can constitute an Eighth Amendment or Article 55[, UCMJ,] violation. A failure to provide basic psychiatric and mental health care can constitute deliberate indifference. However, it is not constitutionally required that health care be "perfect" or "the best obtainable." Appellant [is] entitled to reasonable medical care, but not the "optimal" care recommended. . . .

*White*, 54 M.J. at 471 (citations omitted).

■■■■ To prevail on this type of claim under an Eighth Amendment analysis, the appellant must show: (1) he has exhausted administrative remedies, both the confinement grievance system and in accordance with Article 138, UCMJ; (2) prison officials committed a "sufficiently serious act or omission" that denied him necessities; and (3) the act or omission resulted from a culpable state of mind reflecting deliberate indifference to his health and safety by the confinement officials. *Lovett*, 63 M.J. at 215. We look objectively at whether an act denied a prisoner his necessities, while we subjectively test the state mind of the prison officials. *United States v. Brennan*, 58 M.J. 351, 353 (C.A.A.F. 2003). We conclude that the appellant has not demonstrated the prison official acted with deliberate indifference and therefore, does not prevail on his Eighth Amendment claim.

Prior to his court-martial the appellant had been prescribed antidepressant and relaxant medication, ostensibly to treat his depressive disorders. The appellant had previously deployed twice to Iraq. During his first deployment to Joint Base Balad, Iraq, the appellant performed "outside the wire" patrols and directed Security Forces response during indirect fire attack. During his second deployment to Joint Base Balad, Iraq, the appellant was part of an advanced marksman counter-sniper team and again performed off-base patrols. In June 2011, the appellant was medically evacuated from Iraq due to an inflamed esophagus and stomach lining. He required a month of treatment at Landstuhl Medical Center in Germany before he was medically cleared to return to Mountain Home AFB, Idaho.

Immediately prior to entering confinement the appellant was examined by a doctor from the Mountain Home AFB urgent care clinic who certified that the appellant was fit for confinement and it would not produce serious injury to the appellant's health. For the first 15 days of his sentence, the appellant was confined at a local civilian jail, the Elmore County Detention Facility. While there, the

---

5. Article 137, UCMJ, 10 U.S.C. § 937, requires enlisted members to be briefed on, among other things, Article 138, UCMJ, 10 U.S.C. § 938, upon initial entrance to active duty, after six months on active duty, and upon each reenlistment. Presumably, the appellant received at least two briefings on Article 138, UCMJ. Notably, Article 137, UCMJ, does not require trial defense counsel to provide these briefings.

6. This is not a case where the appellant informed his trial defense counsel of conditions that might violate Article 12, UCMJ, and his counsel failed to pursue his claim. Such a fact pattern would likely fail the first two prongs of the test enumerated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

7. U.S. CONST. amend. VIII.

appellant was not provided his prescribed medication. The appellant notified his first sergeant, MSgt RG, of the issue. MSgt RG told the appellant he would look into the situation. MSgt RG conferred with representatives at the confinement facility and was told that the confinement staff and the prison doctor did not allow narcotics in the facility. MSgt RG informed the appellant the confinement facility was within its rights and there was nothing that could be done. Once he was transferred to a military confinement facility, the appellant was again provided his prescribed medication.

The agreement between Mountain Home AFB and the Elmore County Detention Facility states: "The Elmore County Detention Facility shall provide basic medical care to Mountain Home [AFB] detainees/inmates ... The Elmore County Detention Facility agrees to provide Mountain Home [AFB] detainees/inmates with the same level of medical care and services provided to local detainees/inmates." Mountain Home AFB agreed to pay the facility $60 per day per inmate.

## I. Jurisdiction over Eighth Amendment Claim

■ The Air Force entered into an agreement of work with a local confinement facility which only provided for basic medical care. Rather than immediately sending the appellant to a military confinement facility, where he would receive full treatment, he was housed at that local confinement facility. While basic medical care may have been sufficient, in this case, the record indicates the appellant was denied medical care for his diagnosed disorders. He was denied access to his prescribed medications for 15 days. As the Supreme Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose....

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.

*Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted).

The Government argues it was not the Air Force, but the local civilian confinement facility that denied the appellant his medical care, and thus the Eighth Amendment is not available as a source of relief for him before this court. As our superior court held:

> [W]e have jurisdiction under Article 67(c)[, UCMJ,] to determine on direct appeal if the adjudged and approved sentence is being executed in a manner that offends the Eighth Amendment or Article 55[, UCMJ]. Our statutory authority is to act "with respect to the findings and sentence." This grant of authority encompasses more than authority merely to affirm or set aside a sentence. It also includes authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials, and to ensure that the sentence is executed in a manner consistent with Article 55[, UCMJ,] and the Constitution.

*White,* 54 M.J. at 472.

Accordingly, we have not only the authority, but the obligation to question the severity of appellant's sentence as executed, even though he was housed in a non-Air Force facility. The Air Force cannot contract away its constitutional obligations to its Airmen, nor can it foreclose the appellate review of unconstitutional confinement through the use of agreements with third parties. *See* R.C.M. 705(c)(1)(B) and 1110(c).

## II. Administrative Exhaustion

As we discussed in our analysis of the appellant's claim under Article 12, UCMJ, a prisoner must exhaust all administrative relief prior to our review, including utilizing the prisoner grievance system of the confinement facility and complaints in accordance with Article 138, UCMJ. *See Wise,* 64 M.J. at 471.

■ The appellant notified his first sergeant he was not receiving his medication. The first sergeant then made the complaint to the prison on behalf of the appellant. We do not believe the form of the complaint to be controlling. *See McCoy v. Gilbert,* 270 F.3d 503 (7th Cir.2001) ("The prisoner must have clearly given the institution notice of his particular demands and reasonably triggered an attempt to resolve them."). Here, the appellant's complaint and requested remedy were clearly made and relayed to the confinement facility. The institution of Elmore County Detention Facility was on notice of the particular demand, which reasonably triggered an obligation to resolve it. That the complaint was made by the first sergeant in his dual role of representing the appellant and the Air Force should have served to increase the attention the county detention facility personnel placed on the complaint.

The first sergeant described his duties as "taking care of the needs of the enlisted force and advising the squadron commander on the health, morale and welfare of his enlisted members." While an official Article 138, UCMJ, complaint was not filed within the 15 days the appellant was in the local confinement facility, he made a complaint to his first sergeant, who was acting within his official Air Force capacity. He rightfully expected the first sergeant to resolve the issue, but was told that there was nothing the Air Force could do to remedy the situation. The first sergeant presumably relayed the complaint to the squadron commander as part of his duties of keeping the commander apprised of the health of the appellant. It was not until after the appellant both believed himself to be wronged by his commanding officer and after due application to his commanding officer that the appellant would even be entitled to make an Article 138, UCMJ, complaint.

We find the appellant's failure to exhaust the Article 138, UCMJ, complaint process was due to unusual circumstances. He was confined in an off-base facility and relayed his complaint to an official Air Force representative, but he was transferred after only 15 days, which was not enough time to fully exhaust the prisoner grievance system and the Article 138, UCMJ, complaint process. Thus, the appellant's claim warrants judicial intervention. *See Wise,* 64 M.J. at 471; *Miller,* 46 M.J. at 250.[8]

### III. Denial of Necessities

■ The appellant was entitled to reasonable medical care for his medical condition. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle,* 429 U.S. at 103, 97 S.Ct. 285. "Conditions that violate the Eighth Amendment include 'deliberate indifference to serious medical needs.'" *White,* 54 M.J. at 474 (citing *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285). We have previously examined this high standard, and determined that a serious medical need requires "*serious health risks.*" *United States v. Haymaker,* 46 M.J. 757 (A.F.Ct.Crim.App.1997). In order for psychological pain to be actionable under the Eighth Amendment, it must be based upon a well-established and clinical diagnosis of anxiety or depression. *United States v. Sanchez,* 53 M.J. 393, 396 (2000).

■ Here, the sworn declaration of the appellant sets forth the specific fact that he was prescribed two medications for the treatment of major depressive disorder. This statement is neither speculative nor conclusive, but instead is a brief factual statement. "[I]f the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, [we] can proceed to decide the legal issue." *Ginn,* 47 M.J. at 248. The affidavit submitted by the Government expressly agrees that the appellant was not provided his "narcotic" medication while in confinement at the county facility. Further, in the affidavit, the Government chose to not contest the relevant fact of the appellant's diagnosis. Thus, the facts before this court are that the appellant was diagnosed with major depressive disorder and prescribed with two narcotic medications for the

8. We distinguish here between his timely complaint to the first sergeant regarding the lack of medical treatment and his failure to raise any complaint about an alleged Article 12 violation until appellate review. The latter is a clear case of failing to exhaust administrative relief.

874

treatment of this condition.[9] Objectively, this leads us to conclude that major depressive disorder is a serious medical condition.[10]

## IV. Deliberate Indifference

 "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285 (quoting *Gregg v. Georgia*, 428 U.S. 153, 157, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* (footnotes omitted). "Deliberate indifference" requires that the responsible official must be aware of facts from which an inference that substantial risk of serious harm exists and he must also draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. 1970. Our superior court has held that there must be evidence of physical or psychological pain in order for the appel-

lant to prevail on a claim of an Eighth Amendment violation. *Brennan*, 58 M.J. at 354; *Sanchez*, 53 M.J. at 396. The quantum of proof required to show the unnecessary and wanton infliction of pain will vary depending on the nature of the alleged violation. *Brennan*, 58 M.J. at 354.

 We need not determine the minimum quantum of proof required as the appellant has not produced any proof of pain, serious harm, or a substantial risk of serious harm. The appellant has not produced any evidence from a qualified medical professional that he was at an increased risk of substantial harm based on the abrupt cessation of his prescribed medication. The appellant has not claimed he suffered any pain. The appellant did not include in his post-trial declaration nor in his clemency petition that he suffered any pain from the lack of medical treatment.

We conclude that although the appellant exhausted his administrative relief, and objectively had a serious medical condition, he failed to prove any harm or substantial risk of harm. Therefore, he does not prevail on his Eighth Amendment claim.[11]

9. Other federal courts have examined this issue and have generally concluded depression accompanied by seizures, suicide attempts, or post-traumatic disorder constitutes a "serious medical condition." *See Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 18 (1st Cir.1995) (depression and seizures caused by head injury, which required prescription medication, was a serious medical need); *Torraco v. Maloney*, 923 F.2d 231, 235 n. 4 (1st Cir.1991) (poor mental health, including depression and multiple suicide attempts, was serious); *White v. Crow Ghost*, 456 F.Supp.2d 1096, 1102 (D.N.D.2006) (depression and suicide found to be serious medical conditions).

10. We note the Air Force considers depression a risk factor for suicide. Air Force Instruction 90–505, *Suicide Prevention Program*, Attachment 1 (10 August 2012). Depression when combined with other risk factors, such as legal and financial problems, increases the likelihood of self-harm. *Id.* In this case, the appellant had just completed his court-martial and was sentenced to a bad-conduct discharge and reduction to E–1. These risk factors are extant on the record. Airmen are exhorted to intervene when they suspect someone is contemplating suicide. The current acronym is ACE: ask your wingman, care for your wingman and escort your wingman. *Id.* at Attachment 2, Part IV. Notably, one of the sug-

gestions is to escort your wingman to a behavioral health profession or medical provider for treatment. *Id.* Therefore, this Court concludes major depressive disorder is a condition that even a lay person would perceive as needing a doctor's attention, and is therefore a "serious medical condition." *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005); *Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991).

11. We considered a post-trial fact finding hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A.1967). However, the appellant did not produce sufficient evidence to reach the threshold for a *DuBay* hearing. "[T]he mere submission of an affidavit does not trigger the need for a post-trial evidentiary hearing." *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004). A DuBay hearing is only authorized if the affidavits raise a factual dispute to a post-trial claim and cannot be resolved through the application of the five factors in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F.1997). Here we need only address one gate of *Ginn:* "[I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis." *Id.* The appellant has not set forth any facts of harm

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37 (C.A.A.F.

2000). Accordingly, the findings and the sentence are

AFFIRMED.

or substantial risk of harm. Any inferences this court could make of harm are at best speculative.

Therefore, we are precluded from ordering a *DuBay* hearing.