**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman MICHAEL J. ROCHE**
**United States Air Force**

**ACM 38266**

**16 June 2014**

Sentence adjudged 4 October 2012 by GCM convened at Wright–Patterson Air Force Base, Ohio. Military Judge: Joshua E. Kastenberg (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 12 years, and reduction to E-2.

Appellate Counsel for the Appellant: Major Scott W. Medlyn and Captain Christopher D. James.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HECKER, Senior Judge:

A general court-martial composed of a military judge sitting alone convicted the appellant, contrary to his pleas, of one specification of engaging in a sexual act with a minor and two specifications of engaging in sexual contact with a minor, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged sentence consisted of a dishonorable discharge, confinement for 16 years, forfeitures of all pay and allowances, and reduction to E-2. Consistent with a pretrial agreement, the convening authority lowered the

confinement to 12 years, disapproved the adjudged forfeitures, and waived the mandatory forfeitures for the benefit of the appellant's spouse and children; he approved the remainder of the sentence as adjudged.[1]

The appellant raises five issues on appeal: (1) whether he is entitled to a new convening authority Action due to errors in the staff judge advocate's recommendation (SJAR); (2) whether his Eighth Amendment rights were violated when he was denied proper medical care while confined in a civilian confinement facility; (3) whether the military judge abused his discretion when he admitted certain evidence under Mil. R. Evid. 414; (4) whether the military judge abused his discretion when he allowed the mother of the victim to testify about the effect of the appellant's actions on the victim; and (5) whether the appellant's sentence of a dishonorable discharge and confinement for 12 years is inappropriately severe.[2] Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Background*

The appellant was convicted of engaging in a sexual act and having sexual contact with the 10-year-old daughter (hereinafter "the victim") of a friend. His misconduct came to light while military authorities were investigating the sexual abuse of the victim by another family friend. At the time of the appellant's court-martial, the other individual was facing federal charges for sexually assaulting the victim on multiple occasions over a five-year period, sexually assaulting other children, and creating and distributing child pornography made during the incidents of sexual abuse.

Consistent with a statement he made to military investigators, the appellant stipulated that he would sometimes get an erection when the victim sat in his lap and that, on one occasion in 2011, he engaged in certain misconduct with the victim when he was spending the night with her family. While the victim was under a blanket with him, the appellant touched her inner thigh and vagina while her pants and underwear were pulled down, placed his hand on her bare stomach, returned his hand to her vaginal area, and then "swiped his finger through the folds of her vaginal lips" as he moved his hand back up. Through a stipulation of expected testimony and the victim's forensic interview, the Government also established that the appellant had moved his fingers slowly up and down the victim's vaginal area, put his fingers inside her vagina, rubbed his penis against the victim's genital area while he and the victim were clothed, and placed the victim's hand on his penis.[3] For this, the appellant was convicted of engaging in a sexual act with

---

[1] The convening authority also deferred automatic and adjudged forfeitures until Action.

[2] Issues 3–5 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] Pursuant to a pretrial agreement, the appellant agreed, inter alia, to enter into a reasonable stipulation of fact regarding the incident he described in his interview, to enter into a reasonable stipulation of the child's expected testimony, to allow the introduction of the child's forensic interview, and to litigate his case before a military judge. Under this pretrial agreement, the appellant maintained his plea of not guilty while the convening authority agreed to

the victim (by penetrating her genital opening with his finger) and engaging in sexual contact with her (by rubbing his penis against the victim's genitalia through clothing and causing her to place her hand on his penis).

*Post-Trial Processing*

During presentencing, trial counsel submitted a Personal Data Sheet (PDS) dated 1 October 2012 to the military judge, and it was admitted as a prosecution exhibit. The PDS noted that the appellant had "9 years, 3 months" of service, had never received nonjudicial punishment, and had received an Overseas Ribbon–Short Tour award with one device and a "North Atlantic Treaty Organization (NATO) Meritorious Medal."[4]

In December 2012, the staff judge advocate (SJA) submitted the SJAR to the convening authority. Attached to the SJAR was an incorrect version of the PDS, dated 8 June 2012. This PDS incorrectly stated the appellant had received nonjudicial punishment on one occasion and omitted the appellant's device on his Overseas Ribbon–Short Tour and any reference to a NATO medal. It also incorrectly listed his length of service as "8 years, 11 months."

In January 2013, trial defense counsel submitted the appellant's clemency package to the convening authority. The clemency package did not raise the errors in the PDS. On 15 January 2013, the SJA provided the SJAR Addendum to the convening authority. Attached to the Addendum was a copy of the appellant's clemency request, the appellant's sentencing package, the appellant's enlisted performance reports, various character letters, and the SJAR with attachments. The Addendum advised the convening authority that he must consider matters submitted by the appellant prior to taking action. That same day, the convening authority endorsed the Addendum stating that he had considered the "attachments" before taking action on the appellant's case. The appellant contends he is entitled to a new SJAR and convening authority Action because the SJA misinformed the convening authority about his disciplinary record and military service.

Proper completion of post-trial processing is a question of law, which this Court reviews de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Failure to comment in a timely manner on matters in the SJAR, or on matters attached to the SJAR, waives any later claim of error in the absence of plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). In this case, the

---

disapprove any adjudged forfeitures, disapprove any confinement in excess of 12 years, and waive mandatory forfeitures for the benefit of the appellant's dependents.

[4] Based on other information in the record of trial, this award actually appears to be a "NATO Medal," awarded to members of units or staffs taking part in NATO operations in Afghanistan for at least 30 days in Afghanistan.

SJAR included an erroneous PDS, which stated the appellant had received nonjudicial punishment and omitted information about two awards he had received. This was error.[5] To be entitled to relief, however, the appellant must show prejudice. Although the convening authority's vast power to grant clemency makes the threshold for prejudice low, an appellant must nevertheless make some "colorable showing of possible prejudice in terms of how the [perceived error] potentially affected [his] opportunity for clemency." *Id.* at 437 (quoting *Kho*, 54 M.J. at 65). The appellant has not done so in this case.

The appellant alleges the misleading PDS "could have had an effect on the convening authority's decision" to not provide any clemency to the appellant. We find the appellant failed to make a colorable showing that he suffered prejudice from the error. The approved sentence in this case is substantially less than the maximum, which included confinement for life without the possibility of parole. Considering the appellant's offenses and the information properly before the convening authority, we are convinced that knowledge of the appellant's two additional awards (which covered overseas service that the convening authority *was* informed about) and lack of nonjudicial punishment would have had no impact on the convening authority's decision not to reduce the appellant's sentence below the limits set by the pretrial agreement.

*Cruel and Unusual Punishment*

Ten days before his trial in early October 2012, the appellant underwent a surgical procedure which resulted in certain post-operative symptoms, including pain and drainage. The day after he entered confinement at a civilian facility, a medical doctor found the appellant to be "fit for confinement" and that confinement "will not produce serious injury to [his] health" if he was able to sit in warm water at least twice a day. On 16 October, ten days after he was convicted, the appellant submitted a request that his sentence to confinement be deferred for 14 days due to the pain he was experiencing, as well as his lack of access to pain medication at the facility. On 25 October 2012, the convening authority denied that request, noting that the appellant had already been transferred to an on-base facility "to help address and alleviate his medical concerns."

The appellant and his defense counsel asked the convening authority to consider the conditions of his civilian confinement when making his clemency decision. The appellant's letter said he had been denied the warm water necessary for his medical treatment, civilian confinement officers had done nothing in response to his complaints, and no one from his unit had visited him in confinement. His defense counsel's clemency submission also states that the appellant missed a post-operative appointment on base because his unit did not arrange to transport him. The SJA addressed the appellant's confinement conditions in the SJAR Addendum, stating the "allegation was

---

[5] We do not find error in the slight understatement of the length of the appellant's service, as the PDS clearly states the date the appellant entered military service.

without merit," and the convening authority's response to the confinement deferral request was sufficient to address it.

The appellant now argues that the denial of "proper medical care" in the civilian confinement facility constituted cruel and unusual punishment under the Eighth Amendment.[6] He contends that the post-trial confinement facility failed to provide him prescribed medication and failed to ensure he could receive treatment (warm water baths) for his condition, thereby denying him his right to necessary medical care.

We review de novo whether the facts alleged establish cruel and unusual punishment, including where that punishment occurred in a civilian facility. *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006); *United States v. McPherson*, 72 M.J. 862, 872 (A.F. Ct. Crim. App. 2013). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (citation omitted). "Denial of adequate medical attention can constitute an Eighth Amendment . . . violation. A failure to provide basic . . . care can constitute deliberate indifference. However, it is not constitutionally required that health care be 'perfect' or 'the best obtainable.' [The a]ppellant [is] entitled to reasonable medical care[] but not the 'optimal' care recommended . . . ." *United States v. White*, 54 M.J. 469, 474-75 (C.A.A.F. 2001) (citations omitted).

To prevail on this type of claim under an Eighth Amendment analysis, the appellant must show: (1) he has exhausted administrative remedies, under both the confinement grievance system and in accordance with Article 138, UCMJ, 10 U.S.C. § 938; (2) prison officials committed a "sufficiently serious act or omission" that denied him necessities; and (3) the act or omission resulted from a culpable state of mind reflecting deliberate indifference by confinement officials to the appellant's health and safety. *Lovett*, 63 M.J. at 215. We look objectively at whether an act denied a prisoner his necessities, while we subjectively test the state mind of the prison officials. *United States v. Brennan*, 58 M.J. 351, 353 (C.A.A.F. 2003). The appellant has submitted no declarations or affidavits supporting this issue on appeal, and the information in the deferment and clemency requests does not lead us to the conclusion the prison officials were acting in a manner that was deliberately indifferent to his "serious medical needs." We therefore conclude that the appellant does not prevail on his Eighth Amendment claim.

*Mil. R. Evid. 414 Evidence*

Over a defense objection, the military judge admitted the testimony of Ms. LK, regarding an encounter she had with the appellant in 2002 when she was 13 years old.

---

[6] U.S. CONST. amend. VIII.

Ms. LK testified that she went to the appellant's house with a friend. At the time, the appellant was 17 years old and Ms. LK had never met him before. After the two ended up sitting on the appellant's bed, they kissed and the appellant touched her thigh and her vaginal area over her underwear. LK testified that the appellant "tried to go further" by putting his hands under her panties but stopped when she told him "no." Several months later, LK's mother reported the incident to the police after she found a letter LK had written to the appellant which referenced the encounter. The appellant was arrested and pled guilty in Wisconsin state court to second degree sexual assault of a child under 16 years old and received 2 years' probation. Based on a diversion agreement, the conviction was dismissed in 2005. The military judge admitted this evidence under Mil. R. Evid. 414, which permits the admission of "evidence of similar crimes in child molestation cases." Pursuant to *Grostefon*, the appellant alleges this constitutes an abuse of the military judge's discretion.

Mil. R. Evid. 414 provides that "[i]n a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant." Before admitting evidence of other acts of child molestation under Mil. R. Evid. 414, the military judge must make three threshold findings: (1) that the accused is charged with an act of child molestation as defined by the rule; (2) that the proffered evidence is evidence of his commission of another offense of child molestation; and (3) that the evidence is relevant under Mil. R. Evid. 401 and 402. *See United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000). The military judge must also conduct a Mil. R. Evid. 403 balancing analysis, applying among other factors those identified in *Wright*, including: "Strength of proof of prior act—conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of factfinder; and time needed for proof of prior conduct. . . . temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties." *Id.* at 482-83 (citations omitted).

We review a military judge's admission of propensity evidence for an abuse of discretion. *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010). If the military judge makes findings of fact, we review the findings for clear error. *United States v. Bare*, 63 M.J. 707, 710 (A.F. Ct. Crim. App. 2006) (citing *United States v. Springer*, 58 M.J. 164, 167 (C.A.A.F. 2003)). We review conclusions of law de novo, including whether the admitted evidence meets the threshold requirements of Mil. R. Evid. 414. *Id.* When the military judge conducts a proper balancing test under Mil. R. Evid. 403, we will not overturn the ruling unless there is a clear abuse of discretion. *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998).

The military judge made the required threshold findings and conducted a detailed Mil. R. Evid. 403 balancing analysis. We find no clear error in his findings of fact and

we agree with his conclusions of law. Therefore, the military judge did not err in admitting evidence of the appellant's uncharged misconduct with Ms. LK.

*Sentencing Evidence*

After the Government indicated it planned to call the victim's mother to testify about the impact of the appellant's crime on her daughter, trial defense counsel objected on two grounds.

The military judge found that "generalized testimony of victim impact," although relevant, would be unfairly prejudicial under Mil. R. Evid. 403 in this case because the victim had also been sexually abused by another individual, making it "difficult to . . . parse through who may have caused what" impact to the victim. The military judge did, however, allow the mother to testify about the appellant's relationship with the family and the victim, as well as any reaction the victim had to being in his presence. Pursuant to that limitation, the victim's mother testified that the victim

> has a hard time saying [the appellant's] name, and sometimes she will just spell it or refer to him as, 'That person." She goes into a recluse mode where she will pull away from whatever activity is going on. At school, when she has a trigger like that like hearing his name or remembering something, she will hide under her desk or she'll hide in the corners of the classroom or in the closets. If she gets tired, some of her triggers, she will—she will start crying. If she's thought a lot about it she will have nightmares.

Trial counsel then asked, "And that is particularly about [the appellant]?" The mother testified, "Sometimes they are particular, yes." Although the military judge had specifically invited the defense to object if the responses of the mother constituted "some generalized testimony that could be applicable to what [misconduct the other individual] has committed," trial defense counsel did not object to this testimony as being outside the scope as allowed by the military judge.

Pursuant to *Grostefon*, the appellant now contends the military judge abused his discretion when he allowed the mother's testimony where she "could not testify the impact was due solely to [the a]ppellant's convictions." We note, however, that once a military judge limits the scope of a witness's testimony, the defense must object to any witness testimony that exceeds that order. *United States v. Johnson*, 35 M.J. 17, 21 (C.M.A. 1992). Absent objection, any "erroneous testimony [that is] permitted" will be subject to plain error review. *Id*.

Under either standard, we find against the appellant. The military judge properly recognized that the admissible sentencing evidence must relate to the impact of the

appellant's offenses on the child. He also explicitly stated that he would "carefully parse out any . . . generalized testimony which could have the tinge . . . of a spillover from anything that [the other offender] did." To the extent that aspects of the victim's behavior, as relayed by the mother's testimony, could have been the result of the other offender's abuse, we are confident that the military judge did not use that in fashioning his sentencing decision in the case. *United States v. Erickson*, 65 M.J. 221, 224 (C.A.A.F. 2007) ("Military judges are presumed to know the law and follow it absent clear evidence to the contrary."). Accordingly, we find neither an abuse of discretion nor plain error in the admission of the victim's mother's testimony.

*Sentence Severity*

This Court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006). *See also United States v. Healy*, 26 M.J. 394, 395-96 (C.M.A. 1988); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant argues, pursuant to *Grostefon*, that his sentence to a dishonorable discharge and 12 years' confinement is inappropriately severe in light of his ten-year Air Force career and his lack of a disciplinary record other than a referral performance report for failing a fitness test. We have given individualized consideration to this particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all other matters contained in the record of trial, and find nothing inappropriate about the appellant's sentence for sexually abusing a 10-year old child.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the approved findings and sentence are

AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38266